IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* J. DOUGLAS STRAUSER, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>STEPHEN L. LAFRANCE HOLDINGS, INC., *et al.*,<br><br>    Defendants. | Case No. 18-cv-673-GKF-FHM |

**FIFTH AMENDED SCHEDULING ORDER**

Before the court is the defendants' Motion to Extend Defendants' Expert Deadlines and All Remaining Deadlines in Fourth Amended Scheduling Order [Doc. 285] and Relator's Motion in the Alternative to Amend the Fourth Amended Scheduling Order [Doc. 289]. For the reasons set forth below, both motions are granted.

**I. Background**

This is a *qui tam* action for violations of the False Claims Act (FCA), 31 U.S.C. §§ 3728–33. Relator J. Douglas Strauser filed his *qui tam* complaint in the United States District Court for the Western District of Oklahoma on May 14, 2013. The case was sealed while the government investigated the allegations. During that time, Relator filed his First Amended Complaint (FAC). On April 30, 2018, the United States filed a Notice of Election to Decline Intervention. Thereafter, the court in the Western District unsealed the case.

Relator alleges FCA violations based on a price matching program involving Medicaid and Medicare Part D. Specifically, Relator alleges that USA Drug, which Walgreens acquired in 2012, matched Walmart's four-dollar pricing for a thirty-day supply and ten-dollar pricing for a ninety-day supply of many generic medications for cash-paying customers. Relator alleges that, from

2007 through 2013, USA Drug pharmacies submitted false claims to federal and state government healthcare programs, including Medicaid and the Medicare Part D program, because USA Drug pharmacies reported their own retail prices—instead of the lower price-matching prices—as their "Usual and Customary Charge" for prescription drugs resulting in over-payment.

On July 16, 2018 defendants filed two motions to dismiss. The first was filed by defendants Walgreen Co. (Walgreens), Stephen L. LaFrance Holdings, Inc. (LaFrance Holdings), and Stephen L. LaFrance Pharmacy, Inc. (LaFrance Pharmacy) and the second was filed by defendants Arcadia Valley Drug Co., Daleco, Inc., Ellisville Drug Acquisition Co., Jarco Pharmacies, Inc., Stephen L. LaFrance, Jr., and Jason LaFrance. On December 21, 2018, the Western District transferred the case to this district pursuant to 28 U.S.C. § 1404(a). On March 7, 2019, this court denied the motions to dismiss, concluding the FAC met the requirements of Federal Rules of Civil Procedure 12(b)(6) and 9(b).

The court then entered the first Scheduling Order on April 9, 2019. [Doc. 153]. The initial fact discovery cutoff was February 7, 2020. Both sides filed motions to extend or modify the initial Scheduling Order to permit additional discovery. [Doc. 198, 232]. Relator also filed a motion to take additional depositions. [Doc. 201]. Magistrate Judge McCarthy held a telephonic conference on the motions on February 7, 2020. As Judge McCarthy noted "[i]n broad terms both sides contend they have diligently conducted discovery but have been unable to complete necessary discovery within the current deadline because of actions or inaction of the other side or non-parties. The responses generally question the diligence of the other side, the relevance of additional discovery, and seek to deny or limit the other sides' requested discovery." [Doc. 249, p. 1]. Judge McCarthy concluded "[t]he court is persuaded that both sides have been reasonably diligent in their discovery efforts. The court is also persuaded that the general areas of additional party and

non-party discovery set forth in the motions are relevant for discovery purposes and necessary for a fair resolution of the case on its merits. The court therefore finds good cause to extend the current Scheduling Order." [*Id.*, pp. 1-2]. To that end, Judge McCarthy extended the deadlines by ninety days and permitted each side to take an additional ten depositions. [*Id.*, p. 2]. The fact discovery cutoff was extended to May 7, 2020. [Doc. 250].

The deadlines were extended three additional times. On March 26, 2020, the parties filed a joint motion to extend the deadlines in the Amended Scheduling Order by one month, citing delays caused by the coronavirus pandemic. [Doc. 264]. The court granted the motion and set fact discovery cutoff for June 8, 2020. [Doc. 265]. Again citing the coronavirus pandemic, the parties filed another joint motion to extend deadlines in the Second Amended Scheduling Order. [Doc. 271]. The court granted the motion and entered the Third Amended Scheduling Order, which set fact discovery cutoff for July 8, 2020. [Doc. 272]. On July 6, 2020, the parties jointly requested an extension to complete four outstanding depositions. [Doc. 273]. The court granted the motion and entered the Fourth Amended Scheduling Order, setting the fact discovery cutoff for August 14, 2020 and trial for May 17, 2021. [Doc. 274].

On August 25, 2020, Relator filed its "Expedited Motion to Enforce August 14 Discovery Deadline and Exclude any Late Data Productions." [Doc. 280]. Relator sought "an order enforcing the August 14, 2020 fact discovery deadline and prohibiting [defendant] Walgreens from using any claims data that may be produced by Walgreens to Relator at some unknown date in the future." [Doc. 280, p. 2]. The court denied the motion without prejudice. [Doc. 284].

Now before the court is the defendants' Motion to Extend Defendants' Expert Deadlines and All Remaining Deadlines in the Fourth Amended Scheduling Order [Doc. 285] filed September 4, 2020. Defendants request a ten- to eleven-week extension to obtain the Medicare

3

Part D data from CMS and incorporate it into their expert reports. Relator opposes the motion, arguing defendants failed to diligently pursue the data during the repeatedly extended fact discovery period and then failed to move for an extension of the schedule before the fact discovery cutoff passed. [Doc. 288]. Alternatively, Relator requests that, if the court grants an extension, the court also grant a ten-week extension of his expert report deadline and an October 19, 2020 deadline for the production of the CMS data by defendants to Relator. [Doc. 289].

## II. Legal Standard

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, the Rule 16(b)(4) standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (alterations and internal quotation marks omitted). "While the district court is afforded broad discretion in managing the pretrial schedule, [the Tenth Circuit] has recognized that a scheduling order can have an outcome-determinative effect on the case and 'total inflexibility is undesirable.'" *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011) (quoting *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997)). "A scheduling order which results in the exclusion of evidence is, moreover, 'a drastic sanction.'" *Id.* (quoting *Summers*, 132 F.3d at 604).

## III. Analysis

Defendants argue good cause exists to modify the scheduling order because CMS has yet to produce the Medicare Part D data defendants seek despite defendants' diligent efforts to obtain it. Relator disagrees, arguing defendants have not been diligent in seeking the data and the data is not necessary to any issue in this case.

Unlike Medicaid and Medicare Parts A and B which use a "fee for service" model,[1] Medicare Part D is a capitated program in which private insurance companies (Sponsors) enter into agreements with CMS to deliver prescription drug benefits to Medicare beneficiaries. Sponsors are reimbursed largely based on the number of enrollees in the Sponsor's plan, rather than on a prescription-by-prescription basis for the drugs actually provided. Sponsors, not the government, then reimburse pharmacies for drug costs and any associated dispensing fees based upon the terms of the pharmacy's contract with the Sponsor.[2]

In order to participate in the Medicare Part D program, Sponsors submit bids in the year before Part D benefits will be delivered based on anticipated costs. CMS pays Sponsors a per-enrollee advance subsidy based on the Sponsor's standardized bid.[3] Then, at the end of a Sponsor's fiscal year, CMS determines the costs the Sponsor actually incurred and performs a reconciliation to determine whether CMS owes the Sponsor additional payments or whether the Sponsor must reimburse CMS. To perform the reconciliation, CMS uses information about every drug claim submitted to the Sponsor by pharmacies.

Defendants argue the non-public Medicare Part D data they seek from CMS is relevant to this case in that it will allow defendants to calculate the upstream effects, if any, of USA Drug allegedly reporting a higher Usual and Customary Charge than the price-matching costs it offered cash-paying customers. That is, in defendants' view, there is a possibility that the alleged

---

[1] The "fee for service" model is used when the insurer (Medicare Parts A and B, for example) reimburses a beneficiary's health care provider for each service received.

[2] Sponsors often delegate their responsibilities to implement the Medicare Part D program to a Pharmacy Benefit Manager (PBM).

[3] More specifically, based upon CMS-calculated benchmarks, CMS provides each Sponsor with a direct subsidy through advance monthly payments equal to the Sponsor's standardized bid, risk-adjusted for health status, minus the monthly beneficiary premium. 42 C.F.R. §§ 423.315, 423.329.

over*charging* did not result in the government over*paying*. To that end, defendants served CMS with a subpoena on October 11, 2019, four months before the first fact discovery cutoff. Defendants sought four categories of Medicare Part D data—prescription drug event data files by beneficiary and claim transaction; monthly membership report data files by beneficiary and month; payment reconciliation summary report (PRS) data files by plan and year; and low income cost sharing category level data by beneficiary and month. [Doc. 280-2, p. 3]. On October 21, 2019, CMS served objections to the subpoena. [*Id.*]. Unable to resolve their disagreements, on January 28, 2020, defendants filed a motion to compel in the United States District Court for the District of Columbia. [*Id.*]. Walgreens and CMS worked to narrow the issues and CMS agreed to produce the requested prescription drug event data, monthly membership report data, low income cost sharing date, and PRS data without certain Direct and Indirect Remuneration (DIR) data files CMS believed it could not disclose because it contains proprietary trade information and confidential pricing information. [*Id.*, pp. 3-4]. On May 14, 2020, the D.C. District Court agreed with CMS, concluding that defendants could not compel CMS to disclose the DIR data. [*Id.*, p. 9]. However, the court ruled partly in defendants' favor by holding defendants must pay 60% of the costs of the search, processing, and production of information pursuant to their subpoena and CMS shall be responsible for the remaining 40% of costs. [*Id.*, p. 13].

Defendants argue that, since that time, they have "engaged in a significant number of communications with CMS and the Department of Justice (DOJ) regarding the production of the Part D data." [Doc. 286, p. 3]. In support, defendants summarize 35 communications exchanged between defendants, DOJ, and CMS between May 27, 2020 and August 27, 2020. [Doc. 282, pp. 9-12]. However, "[d]espite numerous emails to CMS requesting payment instructions," CMS did not provide all the necessary instructions for payment until September 4, 2020 and CMS would

not begin the data pull until payment was made. [Doc. 286, p. 6]. Defendants also argue they provided Relator with regular updates regarding the timing CMS expected as to the production of the Part D data and the fact that CMS would not provide defendants with instructions on how to remit its share of payment. [*Id.*]. According to defendants, when the parties were negotiating the last extension to fact discovery in early July, Relator expressed concerns regarding the timing of CMS's production but later noted "[a]s long as we can agree to adjust the expert deadlines to account for substantial data productions (like CMS) if necessary, I think my concern is taken care of." [*Id.*, p. 8; *see also* Doc. 282-1, p. 2].

Relator argues "Defendants' claim of diligence in pursuing their Medicare Part D data from CMS is meritless." [Doc. 288, p. 5]. According to Relator, defendants first informed the court of their plan to pursue discovery from the federal government in March 2019, but did not subpoena CMS for over six (6) months. Then, defendants failed to pay for the discovery CMS was willing to provide in January 2020 and instead elected to file a motion to compel in the D.C. District Court. However, issuing a subpoena with four months remaining in discovery and filing a motion to compel—which was partly successful—does not demonstrate a wholesale lack of diligence on the part of defendants, especially when CMS did not provide full payment instructions until last week.

Relator also argues the data is not necessary. In support, Relator cites *United States ex rel. Schutte v. Supervalu*, 2019 WL 1277031, at *5 (C.D. Ill. May 20, 2019). In *Schutte*, the district court considered the defendants' motion to exclude certain expert testimony. Similar to the allegations in this case, *Schutte* was "a False Claims Act case, wherein the Relators allege[d] that Defendant pharmacies submitted false or fraudulent claims to obtain federal funds from Government Healthcare Programs (GHP) to which they were not entitled. The Relators allege[d] this occurred through the electronic submission of inflated usual and customary charges to GHPs

7

because Defendants failed to report their cash price matches as their usual and customary price." *Id.* at 1. The court determined that Relator's expert testimony was admissible when he relied on pharmacy claims (rather than CMS data) because "[w]hether an expert has selected the best data set to use is a question for the jury, not the judge. As long as there is a rational connection between the data and the opinion, an expert's reliance on faulty information—as the Defendants allege [the expert] did in his methodology—is a matter to be explored on cross-examination; it does not go to admissibility." *Id.* at *5 (alterations omitted). Further, the court determined the expert's methodology was sufficiently reliable because "[i]t can be tested by cross-examination and presentation of contrary evidence." *Id.* at *6. Relator believes this case illustrates that pharmacy data is sufficient to calculate damages. But, the admissibility of a calculation model based on pharmaceutical data alone does not mean the CMS data is unnecessary here. In fact, the reasoning in *Schutte* highlights the importance of offering contrary evidence and testing expert conclusions on cross-examination so the jury, not the judge, can determine which expert has selected the best data set to use.

      The court is satisfied that defendants have pursued the CMS data with sufficient diligence and that the data is likely to be beneficial to a fair resolution of this matter. A better course would have been for defendants to seek an extension before the August 14 fact discovery cutoff, but, as the Tenth Circuit has noted, "total inflexibility is undesirable," especially where the enforcement of a scheduling order would result in the exclusion of evidence. *See Rimbert*, 647 F.3d at 1254. And, here, Relator was aware of the delay in CMS data production, the deadline passed less than a month ago, and trial is still several months away. Good cause justifies an extension of the scheduling order. Accordingly, defendants' motion is granted.

However, as Relator points out, defendants seek only an extension of their expert deadlines and any extension should be afforded to both sides so all relevant experts can review the CMS data. Relator asks the court to extend its expert deadlines and all subsequent deadlines by ten (10) weeks. The court agrees that such an extension is fair and reasonable to all parties. For good cause shown, Relator's motion is also granted.

Relator also asks the court to set an October 19, 2020 deadline for receipt of the CMS data. Defendants represent that "CMS has predicted six to eight weeks to pull and produce the data to Walgreens." [*Id.*, p. 4; *see also* Doc. 282-10, p. 6]. Accordingly, the CMS data shall be produced on or before November 9, 2020.

WHEREFORE, defendants' Motion to Extend Defendants' Expert Deadlines and All Remaining Deadlines in Fourth Amended Scheduling Order [Doc. 285] and Relator's Motion in the Alternative to Amend the Fourth Amended Scheduling Order [Doc. 289] are granted.

IT IS FURTHER ORDERED that the following deadlines are extended as follows:

|  | **Previous Date** | **New Date** |
|---|---|---|
| Deadline for Receipt of CMS Data | N/A | 11/9/2020 |
| PLAINTIFF'S EXPERT IDENTIFICATION & REPORTS Under Federal Rule of Civil Procedure 26(a)(2) (Not Filed of Record) | 9/14/2020 | 12/14/2020 |
| DEFENDANT'S EXPERT IDENTIFICATION & REPORTS Under Federal Rule of Civil Procedure 26(a)(2) (Not Filed of Record) | 10/26/2020 | 1/20/2021 |
| EXPERT DISCOVERY CUTOFF | 12/7/2020 | 2/15/2021 |
| DISPOSITIVE MOTIONS AND DAUBERT MOTIONS | 1/27/2021 | 3/17/2021 |
| MOTIONS IN LIMINE | 1/27/2021 | 3/17/2021 |
| DEPOSITION/VIDEOTAPED/INTERROGATORY DESIGNATIONS (File pleading with deponent name, page and line designations) | 3/18/2021 | 4/29/2021 |
| COUNTER-DESIGNATIONS (File pleading with deponent name, page and line designation) | 3/25/2021 | 5/6/2021 |
| TRANSCRIPTS ANNOTATED WITH OBJECTIONS & BRIEFS ON UNUSUAL | 4/1/2021 | 5/13/2021 |

| | | |
|---|---|---|
| OBJECTIONS FILED (Attorney Meeting to resolve objections required before filing) | | |
| **HEARING ON DISPOSITIVE MOTIONS at 9:30a.m.** | **4/16/2021** | **6/4/2021** |
| PRETRIAL DISCLOSURE Under Federal Rule of Civil Procedure 26(a)(3) | 4/19/2021 | 6/21/2021 |
| AGREED PROPOSED PRETRIAL ORDER, Incl. Witness & Ex. Lists with Objections | 4/26/2021 | 6/28/2021 |
| REQUESTED JURY INSTRUCTIONS, REQUESTED VOIR DIRE & TRIAL BRIEFS | 5/10/2021 | 7/12/2021 |
| **PRETRIAL CONFERENCE at 9:30a.m.** | **5/3/2021** | **7/6/2021** |
| **TRIAL DATE: JURY at 9:30a.m. Estimated time of Trial 2 weeks** | **5/17/2021** | **7/19/2021** |

IT IS SO ORDERED this 11th day of September, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE